In The


Court of Appeals


Sixth Appellate District of Texas at Texarkana



______________________________



No. 06-03-00221-CR


______________________________




BILLY RAY HENDERSON, Appellant



V.



THE STATE OF TEXAS, Appellee




 


On Appeal from the 363rd Judicial District Court


Dallas County, Texas


Trial Court No. F03-34709-UW




 




Before Morriss, C.J., Carter and Moseley, JJ.


Memorandum Opinion by Justice Moseley



MEMORANDUM OPINION



 In 2003, a Dallas County jury found Billy Ray Henderson guilty of delivering more than one
gram but less than four grams of cocaine. See Tex. Health & Safety Code Ann. § 481.112(c)
(Vernon 2003). The jury subsequently found Henderson had been twice previously and sequentially
convicted of a felony offense, elevating the applicable punishment range to that of a first-degree
felony, with a minimum term of twenty-five years' imprisonment.  See Tex. Penal Code Ann.
§ 12.42(b) (Vernon Supp. 2007). The jury elected to assess Henderson the maximum penalty, a life
sentence. 

 For various reasons, Henderson was unable to review the trial court's records during his
original appeal. The Texas Court of Criminal Appeals recently granted Henderson a second chance
in the form of this out-of-time appeal. Henderson appears pro se on appeal and now raises several
points of error. For the reasons set forth below, we overrule each issue and affirm his conviction and
sentence.

I. Alleged Use of Perjured Testimony

 In his first point of error, Henderson alleges that the State used tainted evidence and perjured
testimony to obtain his conviction. Essentially, Henderson contends that undercover narcotics
officer Don Cawthon lied at trial about the quantity of cocaine seized during the narcotics transaction
and that because of the alleged lies, all of Cawthon's testimony must be removed from consideration. 
According to Henderson's continued argument, the remaining evidence introduced against him would
then be insufficient to support his conviction. 

 Henderson's appellate brief highlights three problems with Officer Cawthon's testimony,
inconsistencies that Henderson contends renders the entirety of Cawthon's testimony unworthy of
credibility. First, Cawthon testified that on April 15, 2003, he purchased several "pieces" of crack
cocaine from Henderson. Cawthon later clarified this testimony to say that he purchased a single
"rock" of crack cocaine from Henderson for $100.00. (1) Second, Cawthon testified on direct
examination that Henderson placed the crack cocaine on the table next to Cawthon's buy money. 
On cross-examination, however, Cawthon testified Henderson "took [the rocks of cocaine] out of
a bag and just handed [them] to me . . . ." Third, Henderson contends that Cawthon lied when he
stated that Henderson had previously sold him drugs on April 2, 2003. Henderson suggests in his
brief on appeal that he was visiting his parole officer at the time of this alleged extraneous narcotics
offense; therefore, he now attempts to interpose this alibi regarding the previous incident to
demonstrate Cawthon's alleged untruthfulness. 

 Henderson is correct to suggest that the first and second minor factual inconsistencies might
cause a fact-finder to discredit a witness's testimony. However, an appellate court is not the proper
entity to make such a decision on whether minor factual inconsistencies should render the entirety
of a witness's testimony unworthy of accreditation, especially when that same witness later tried to
clarify those inconsistencies. Texas criminal jurisprudence is clear: The jury is the exclusive arbiter
of the credibility of a witness and it is the duty of the jury to resolve any conflicts in the evidence;
it is not the province of an appellate court to play the role of the Monday morning quarterback in that
credibility determination. See, e.g., Wesbrook v. State, 29 S.W.3d 103, 111 (Tex. Crim. App. 2000);
Gomez v. State, 183 S.W.3d 86, 89 (Tex. App.--Tyler 2005, no pet.); Duren v. State, 87 S.W.3d
719, 724 (Tex. App.--Texarkana 2002, no pet.). As to the matter now raised by Henderson as to
whether or not he was visiting his parole officer at the time of the alleged extraneous narcotics
transaction, Henderson's brief on appeal makes no attempt to demonstrate where there is evidence
in the trial court record to support such a claim, see Tex. R. App. P. 38.1(h), and there is certainly
no evidence in the official record of the proceedings below that suggests Henderson was visiting
with his parole officer at the same time of the narcotics transaction about which Cawthon testified. 
Henderson's alleged third discrepancy in the evidence, therefore, is neither adequately briefed nor
is its basis supported by the record.

 Henderson attempts to show another instance wherein he apparently alleges Cawthon to have
been untruthful, but it is impossible to glean from Henderson's brief the nature of the inconsistency
which he alleges. Even if he had clearly shown an inconsistency, this would go to the weight which
the jury would give to such testimony and not to its admissibility. 

 Because the jury was in the best position to evaluate witness credibility and because it is not
the province of this Court to resolve conflicts in the evidence that inherently turn on a jury's
assessment of witness credibility, we overrule Henderson's first point of error.

II. State's Alleged Misstatement of the Facts During Opening Was Not Misconduct

 Henderson next contends the State misstated the facts of the case during its opening
statement. In its opening statement, the State told the jury, "There is only one witness in this case,
and we are going to call that one witness, Don Cawthon." Henderson now contends this statement
is factually incorrect because later evidence showed that other officers were listening to the drug
transaction via a hidden body microphone worn by Cawthon. 

 Henderson raised no objection to the State's opening statement at trial and, therefore, any
issue concerning this statement was not preserved for appellate review. See Tex. R. App. P.
33.1(a)(1); cf. Gearhart v. State, 122 S.W.3d 459, 465 (Tex. App.--Corpus Christi 2003, pet. ref'd);
Najera v. State, 955 S.W.2d 698, 702 (Tex. App.--Austin 1997, no pet.) (objection to opening
statement too general to preserve appellate complaint for review). Moreover, the State's opening
statement is not evidence. Lillard v. State, 994 S.W.2d 747, 752 n.7 (Tex. App.--Eastland 1999,
pet. ref'd) (cited favorably in Powell v. State, 63 S.W.3d 435, 440-41 n.2 (Tex. Crim. App. 2001)
(Johnson, J., concurring)). Further, having reviewed the entirety of the opening statement to which
Henderson now objects, we find it amounts to nothing more than a recitation of the facts the State
then expected the evidence to show; the opening statement certainly presents no reversible error. 
Cf. Norton v. State, 930 S.W.2d 101, 104-05 (Tex. App.--Amarillo 1996, pet. ref'd) (opening
statement, when viewed in light of whole record, showed both sides "were merely discussing what
they expected the evidence [to] show at trial"). A party who does not proceed in trial to provide
evidence to sustain the position it says on opening remarks that it intends to prove may find that it
adversely impacts its credibility with the jury; therefore, if the State made a statement which it later
did not prove, it may have damaged its case, not improved it. We overrule this issue.

III. Sufficiency of the Evidence

 Henderson next contends the evidence is legally insufficient to support his conviction and
then, later in his brief, he goes on to argue that the evidence supports a finding of his actual
innocence. (2) This actual innocence claim is, however, based entirely on evidence that was attached
to Henderson's appellate brief--that is not a part of the official record from the proceedings below. 
We are not permitted to consider evidence that was not part of the record below; such
supplementation is inappropriate under our appellate rules and such proffers of proof are generally
acceptable only within the context of an application for writ of habeas corpus. See Ramirez v. State,
104 S.W.3d 549, 551 n.9 (Tex. Crim. App. 2003) (citing Solomon v. State, 49 S.W.3d 356, 365 (Tex.
Crim. App. 2001); Berry v. State, 995 S.W.2d 699, 702 (Tex. Crim. App. 1999); Farris v. State, 712
S.W.2d 512, 515-16 (Tex. Crim. App. 1986)). We could, therefore, overrule Henderson's actual
innocence claim on this basis alone. Nevertheless, in the interest of justice, we will treat both of
these claims as being a single challenge to the legal sufficiency of the evidence to support his
conviction.

 In assessing the legal sufficiency of the evidence to support a criminal conviction, we
consider all of the evidence in the light most favorable to the verdict and determine whether, based
on that evidence and on the reasonable inferences drawn therefrom, a rational juror could have found
the essential elements of the crime beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307,
318-19 (1979); Powell v. State, 194 S.W.3d 503, 506 (Tex. Crim. App. 2006). The reviewing court
must give deference to "the responsibility of the trier of fact to fairly resolve conflicts in testimony,
to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." 
Jackson, 443 U.S. at 318-19. In reviewing the sufficiency of the evidence, each fact need not point
directly and independently to the guilt of the appellant, so long as the cumulative force of all the
incriminating circumstances is sufficient to support the conviction. See Barnes v. State, 876 S.W.2d
316, 321 (Tex. Crim. App. 1994); Johnson v. State, 871 S.W.2d 183, 186 (Tex. Crim. App. 1993). 
Circumstantial evidence is as probative as direct evidence in establishing the guilt of an actor, and
circumstantial evidence alone can be sufficient to establish guilt. Guevara v. State, 152 S.W.3d 45,
49 (Tex. Crim. App. 2004). On appeal, the same standard of review is used for both circumstantial
and direct evidence cases. Id.; see Hooper v. State, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007).

 Henderson was charged by indictment with delivery of cocaine. More specifically, the
indictment required the State to prove to the jury that Henderson actually or constructively
transferred cocaine weighing more than one gram but less than four grams to Cawthon on or about
April 15, 2003. See Tex. Health & Safety Code Ann. § 481.102(2)(D) (Vernon Supp. 2007)
(defining cocaine as penalty group 1 narcotic), § 481.112 (Vernon 2003) (criminalizing delivery of
penalty group 1 drug).

 The evidence, viewed in the light most favorable to the jury's verdict, showed that Cawthon
testified he purchased crack cocaine from Henderson in an Irving motel room on April 15, 2003. 
During this transaction, Cawthon offered to buy $100.00 of crack from Henderson. Henderson later
laid the cocaine on a table next to Cawthon's buy money, after which Henderson took the $100.00. 
This amounts to a constructive transfer of drugs for money. See Tex. Health & Safety Code Ann.
§ 481.002(8) (Vernon Supp. 2007) ("delivery" includes constructive transfers). The drugs sold to
Cawthon were later submitted to SWIFS for chemical analysis, this analysis revealing that the drugs
purchased by Cawthon from Henderson contained 1.48 grams of cocaine, including adulterants or
dilutants. The State's evidence satisfied the evidentiary requirements of the indictment, which was
authorized by and consistent with our criminal law; the evidence is, therefore, legally sufficient.

IV. Chain of Custody

 Henderson next contends there was a break in the chain of custody for the alleged drugs and
that, due to this break in the evidentiary chain of custody, the drugs should have been excluded. 
Henderson's brief does not attempt to demonstrate that error on this issue was preserved in the court
below. See Tex. R. App. P. 33.1(a), 38.1(h). For the most part, an error not properly preserved is
waived. Additionally, "problems in the chain of custody do not affect the admissibility of the [drug]
evidence. Instead, such problems affect the weight that the fact-finder should give the evidence,
which may be brought out and argued by the parties." Druery v. State, 225 S.W.3d 491, 503-04
(Tex. Crim. App. 2007) (footnote omitted). We overrule this issue.

V. Permitting Officer Gipson To Testify About the Drug Trade

 Henderson next contends the trial court erred by permitting Officer Tony Gipson of the
Dallas Police Department to testify in general terms about the practices employed in cocaine
trafficking. Henderson contends the trial court failed to conduct a Daubert (3) hearing regarding the
admissibility of Gipson's testimony as expert testimony. We review a trial court's ruling regarding
the admission of evidence under an abuse of discretion standard. Rankin v. State, 974 S.W.2d 707,
718 (Tex. Crim. App. 1996) (op. on reh'g); Montgomery v. State, 810 S.W.2d 372, 391 (Tex. Crim.
App. 1991) (op. on reh'g). Only if a trial court's decision falls outside the zone of reasonable
disagreement will that decision be reversed on appeal. Rankin, 974 S.W.2d at 718; Montgomery,
810 S.W.2d at 391.

 Henderson's complaint on this issue fails for three reasons. First, Henderson objected at trial
only to the relevance of Gipson's testimony and not to his qualifications to testify concerning the
evidence he presented. Therefore, the objection now raised on appeal--a challenge to Gipson's
qualifications to testify as an expert witness--was not first raised in the lower court and, therefore,
was not preserved for our review. Cf. Paschal v. State, 35 S.W.3d 80, 82 (Tex. App.--Texarkana
2000, no pet.) (general relevance objection insufficient to preserve appellate complaint about Rule
403). Second, the trial court sustained Henderson's general relevancy objection but Henderson
neither made the additional request that the trial court instruct the jury to disregard Gipson's
testimony nor did he otherwise pursue his relevancy objection to an adverse ruling. Therefore,
assuming (without deciding) that a general relevancy objection could ever be sufficient to preserve
Henderson's Daubert-esque complaint, Henderson failed to preserve the issue for appellate review
by not pursuing such an objection to an adverse ruling. Third, Gipson, as a veteran narcotics
detective with the Dallas Police Department, could have been properly admitted as an expert to
provide testimony regarding the manufacture and sale of crack cocaine in the area; the trial court
could have reasonably determined that such expert testimony would have assisted the jury by
providing it with information regarding the nuances of the illegal narcotics trade. See Tex. R. Evid.
702; Taylor v. State, 106 S.W.3d 827, 832-33 (Tex. App.--Dallas 2003, no pet.) (trial court would
not abuse discretion by permitting Detective Tony Gipson, veteran Dallas narcotics officer, to testify
as expert based on training and experience with manufacture, packaging, possession, and sale of
crack cocaine).

VI. Tulia Comparison

 Henderson also makes several attempts to compare his conviction in this case to the
erroneous convictions of several defendants, collectively called the "Tulia defendants," for narcotics
possession and trafficking. See, e.g., Editorial, Legislators Must Act To Free Tulia 13 on Bail if
Court Doesn't Move, Austin Am. Statesman, May 9, 2003, http://www.statesman.com/editorial/
content/editorial/tulia/0509tulia_edit.html. Henderson asks us to hold that the State's evidence was
manufactured by the Irving Police Department in much the same way as the evidence against the
Tulia defendants was manufactured. Henderson has attached several newspaper and internet articles
to his appellate brief in support of his point of error, including an article from the Winter 2006 issue
of "Justice Denied: The Magazine for the Wrongly Convicted." 

 In briefing this issue, Henderson has not cited to any location in the official appellate record
wherein there is evidence to support his claim that Irving police officers used manufactured evidence
or simulated narcotics to fraudulently obtain Henderson's conviction. Therefore, this issue has been
inadequately briefed, and we overrule it as such. See Tex. R. App. P. 38.1(h). Additionally, after
reviewing the record in this case, we are convinced that the existing record will not support such a
claim by Henderson. Therefore, Henderson's claim that he was framed can be more appropriately
pursued by filing a post-conviction application for writ of habeas corpus. See Tex. Code Crim.
Proc. Ann. art. 11.07 (Vernon Supp. 2007).

VII. Ineffective Assistance of Counsel

 In his next point of error, Henderson claims that his trial counsel performed deficiently in five
respects: his trial counsel (A) did not challenge the lack of affirmative links between the narcotics
and Henderson, (B) did not object to certain aspects of a police officer's testimony, (C) did not object
to the trial court's denial of requests for Brady (4) material, (D) failed to object to testimony from the
State's "surprise" witness, and (E) failed to object to veniremember 17 during voir dire. The standard
for reviewing claims of ineffective assistance on direct appeal is well settled. See Strickland v.
Washington, 466 U.S. 668 (1984); Hernandez v. State, 988 S.W.2d 770 (Tex. Crim. App. 1999). 
Texas appellate courts begin any such analysis by presuming that the appellant's trial counsel
performed competently. Thompson v. State, 9 S.W.3d 808, 813 (Tex. Crim. App. 1999). We also
presume that counsel's decisions were reasonably professional and were motivated by sound trial
strategy. Jackson v. State, 877 S.W.2d 768, 771 (Tex. Crim. App. 1994). In the absence of direct
evidence of counsel's reasons for the challenged conduct, an appellate court will assume a strategic
motivation for the conduct if any can be imagined. Garcia v. State, 57 S.W.3d 436, 440 (Tex. Crim.
App. 2001). We will not conclude that the challenged conduct constitutes deficient performance
unless the conduct was so outrageous that no competent attorney would have engaged in it. Id.

 A. Lack of Affirmative Links

 Henderson claims that his trial counsel's failure to file a motion to suppress the admission
of the narcotics into evidence (due to the alleged lack of any affirmative links between Henderson
and the narcotics) amounted to ineffective assistance. As explained above, Cawthon's testimony
served to affirmatively link Henderson to the State's narcotics evidence. It is possible that, through
his pretrial investigation of the case, Henderson's trial counsel had already learned there was
sufficient evidence to link Henderson to the narcotics. Such an investigation would reasonably
support a strategic decision not to file a motion to suppress evidence.

 B. No Objection to Cawthon's Testimony

 Henderson next claims his trial counsel provided ineffective assistance by failing to object
to certain portions of Cawthon's testimony. This alleged failure concerned allowing Cawthon to
testify about how he (Cawthon) first came to know about Henderson as a suspected drug dealer
without there already being any previous testimony that Cawthon's informant had a previous
narcotics transaction relationship with Henderson. 

 We can imagine a strategic reason to explain counsel's alleged failure to object. The record
indicates that the now-complained-of testimony was being offered as background information so that
the jury could understand why the undercover officer was not surprised to see Henderson appear at
the motel room where the officer was working, even though the officer had initially been scheduled
to meet a different suspected drug dealer. Such evidence could be considered relevant by a trial
court, who could then choose to admit such evidence over any evidentiary objection under Rule 402
of the Texas Rules of Evidence. See Tex. R. Evid. 402. Henderson's trial counsel may have made
the strategic decision to not object because he reasonably believed such an objection (whether on
relevancy, confrontation, or other grounds) would likely be overruled by the trial court because such
testimony was arguably admissible.

 C. Failure To Object To Being Denied Brady Material

 According to Henderson's appellate brief, he personally made a pretrial request to the Irving
Police Department for a copy of Cawthon's personnel files, internal affairs files, departmental
folders, division folders, supervisor's folders, and other things. This open records request was
apparently denied. Subsequently, the record before us shows that Henderson's trial attorney
subpoenaed those same personnel records, which were provided to the trial court under seal. The
trial court thereafter conducted an in camera review of those personnel records and concluded that
the records contained no Brady material. (5) Henderson now contends that his trial counsel's failure
to further object to being denied access to those records amounts to ineffective assistance. 

 Once the lower court overruled trial counsel's request to review those subpoenaed personnel
records, Henderson's attorney was not required to further object in order to preserve the issue for
appellate review; Henderson's attorney had already obtained an adverse ruling on the issue, which
would have been sufficient to preserve any claim of error on this issue. See Tex. R. App. P. 33.1. 
Counsel was not ineffective in this regard.

 D. Allowing the State To Call a "Surprise" Expert Witness

 Henderson next contends that his trial counsel provided ineffective assistance by failing to
ask for a hearing outside the jury's presence to test the qualifications of Officer Gipson as an expert
witness. He also contends that Gipson's name was not disclosed to the defense before trial as a
potential witness.

 As discussed above, the record before us supports a decision to permit Gipson to testify as
an expert about the practices commonly employed in the sale and distribution of crack cocaine in the
Dallas area. It is possible that Henderson's trial counsel expected the State would be able to meet
the threshold for establishing Gipson's expert qualifications and, therefore, made the strategic
decision not to lengthen the trial process by requesting a hearing on Gipson's qualifications outside
the jury's presence. In fact, our sister court has written a published opinion about this same officer's
competency as an expert witness. See Taylor, 106 S.W.3d at 832-33.

 Additionally, the record before us does not contain the copy of the State's witness list that
was provided to Henderson before trial, nor did Henderson otherwise express surprise at trial to
Gipson having been called as a witness. Therefore, the record is inadequate to support his claim that
the State failed to provide Henderson with advance notice of any intent to call Gipson as an expert. 

 E. Failure To Object to the State's Challenge to Veniremember 17

 Finally, Henderson contends his trial counsel failed to object to the State's challenging a
member of the venire for cause during voir dire. The record before us shows that Henderson's trial
counsel did object to allowing the State to strike prospective juror number seventeen for cause. The
record also shows that the prospective juror testified that she would not vote to convict someone
based on the testimony of a single witness, even if she found that witness to be absolutely credible
and even if that witness's testimony otherwise proved all the essential elements of the alleged crime. 
Stated differently, the record shows that the prospective juror would have held the State to a higher
burden of proof than is otherwise required by law because she would have required more evidence
than merely the testimony of a single witness. Cf. Blackwell v. State, 193 S.W.3d 1, 19 (Tex.
App.--Houston [1st Dist.] 2006, no pet.) (proper for State to ask during voir dire if jurors can
convict on testimony of single witness if jurors believe witness beyond reasonable doubt on all
necessary elements to establish offense). 

 The record does not support Henderson's claim that his trial counsel failed to object. Nor
does the record support this conclusion that the trial court erred by denying the State's challenge to
prospective juror 17 because she clearly testified she would not convict an accused based on the
testimony of a single witness. 

 We overrule Henderson's claims of ineffective assistance of counsel.

VIII. Henderson Did Not Preserve His Article 38.141 Claim

 Henderson next claims that Article 38.141 of the Texas Code of Criminal Procedure violates
his rights under the Fourth, Fifth, Sixth, and Fourteenth Amendments to the United States
Constitution. Henderson's brief fails to direct our attention to any location in the appellate record
wherein he preserved this issue for appellate review by first raising it in the trial court. See Tex. R.
App. P. 38.1(h) (appellate brief shall cite to official record from trial below in support of point of
error raised), 33.1 (preservation of error, how shown). As such, this issue has been inadequately
briefed and we overrule it as such. (6)

IX. Conclusion

 For the reasons stated, we overrule each of Henderson's points of error and affirm the trial
court's judgment.



 Bailey C. Moseley

 Justice


Date Submitted: November 28, 2007

Date Decided: December 20, 2007


Do Not Publish
1. Cawthon did not arrest Henderson at this time; Henderson was taken into custody two days
later after police obtained a warrant for Henderson's arrest. Shortly after purchasing the cocaine from
Henderson, Cawthon sealed the narcotics in a bag; this bag was then later sent to the Southwestern
Institute of Forensic Sciences (SWIFS). 
2. See Ex parte Brown, 205 S.W.3d 538, 544-45 (Tex. Crim. App. 2006) (in habeas
proceedings, establishing claim of actual innocence requires showing by clear and convincing
evidence that no reasonable juror could have found the accused guilty; claim of actual innocence on
direct appeal appropriate when record is adequate to evaluate claim).
3. Henderson makes reference to Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579
(1993). The correct rule in Texas criminal cases which employs a test for experts somewhat similar
to that in Daubert is set out in Kelly v. State, 824 S.W.2d 568 (Tex. Crim. App. 1992).
4. Brady v. Maryland, 373 U.S. 83 (1963).
5. See Brady, 373 U.S. 83. 
6. Henderson has also attached to his appellate brief an "exhibit 5," which he admits is not a
part of the record from the proceedings below. With limited exceptions inapplicable here, our
appellate review must be confined to the official record from the trial court's proceedings. See
Whitehead v. State, 130 S.W.3d 866, 872 (Tex. Crim. App. 2004) (citing Solomon v. State, 49
S.W.3d 356, 365 (Tex. Crim. App. 2001); Williams v. State, 937 S.W.2d 479, 487 (Tex. Crim. App.
1996)). We will not reward Henderson's attempt to circumvent our appellate rules by impermissibly
considering exhibits that have been improperly attached to his brief.